CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 04 2012

JULIA C. DUDLEY, CLERK
BY: /s/
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| DEBRA DANSEY,<br>   *Plaintiff/*<br>   *Counterclaim-Defendant,*<br><br>v.<br><br>METROPOLITAN LIFE<br>INSURANCE COMPANY,<br>   *Defendant/Cross-Claim*<br>   *Plaintiff/Counterclaimant,*<br><br>v.<br><br>RAELYN ERDNER, STEPHEN<br>ERDNER, AND PEARL ERDNER<br>   *Cross-claim Defendants.* | Civil Action No. 3:11-cv-00013<br><br>**MEMORANDUM OPINION**<br><br>By: James C. Turk<br>Senior United States District Judge |

Pending before the Court is Plaintiff and Counterclaim-Defendant Debra Dansey's ("Dansey" or "Plaintiff") Motion for Summary Judgment. ECF No. 33. Cross-Claim Defendants Raelyn Erdner, Stephen Erdner, and Pearl Erdner (collectively, "Defendants") responded, (ECF No. 38), and Dansey replied. ECF No. 41. The Court heard oral arguments on the motion on September 27, 2012 and it is now ripe for disposition. For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 33) is **DENIED**. Defendant's Motion to Strike (ECF No. 44), to which Plaintiff has responded (ECF No. 45), is also **DENIED**.

I.    **FACTUAL BACKGROUND**

This dispute arises from a life insurance policy with proceeds of approximately $77,600 issued by Metropolitan Life Insurance Company ("MetLife") for William Erdner ("Decedent"), who died in 2010. Decedent's policy was provided through his employer and is governed by the

Early Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* As discussed herein, the proceeds have been deposited into the registry of the Court by MetLife, and MetLife has been dismissed from the case. The remaining parties, who are all relatives of Decedent, disagree about who is the proper beneficiary of those proceeds.

Decedent was the ex-husband of Defendant Pearl Erdner, father of Defendants Raelyn and Stephen Erdner, and uncle of Plaintiff Dansey. Defendants all reside in New York, where Decedent lived and worked until 1999, when he moved to Virginia. While residing in Virginia, Decedent sometimes lived with Dansey and at other times lived in his own apartment. Decedent remained in Virginia until 2008, when he returned to New York and reconciled with his ex-wife and children.

On January 29, 2003, Defendant Pearl Erdner obtained a divorce from Decedent. The judgment entered by the New York Supreme Court ("Divorce Decree") included a paragraph that states: "the Plaintiff [Pearl Erdner] will designate the parties' children as beneficiaries for one half of the proceeds of the life insurance policy of the Defendant, acquired by virtue of his employment . . . and the Defendant shall retain the right to name a beneficiary for the other one half of the death proceeds of the same policy[.]" ECF No. 38, Ex. A. Despite the language "[Pearl Erdner] will designate," the Decedent apparently was the only person able to effect that designation, since the policy was his. It is undisputed that Decedent, around the time of the divorce, initially complied with the foregoing provision by naming each of his two children as partial beneficiaries, entitling each to twenty-five percent of the proceeds of the policy. It is unclear whether he made any specific designation for the other fifty percent of the proceeds at that time.

2

The primary disagreement in the case stems from a transaction purporting to make Dansey the beneficiary of one hundred percent of the policy. That subsequent transaction occurred on June 10, 2005, when a form was filed electronically with MetLife designating Plaintiff as the sole beneficiary of Decedent's MetLife policy.[1] ECF No. 34, Ex. C. Plaintiff alleges that she was present when Decedent made the change via MetLife's website with an electronic signature and that he desired the change. Defendants challenge the validity of the beneficiary change, alleging that it was made without the knowledge or consent of Decedent, and that Plaintiff had access to the information necessary to make the change. They also argue that the change cannot be effective as to the fifty percent of the proceeds the children were entitled to receive as a result of the Divorce Decree.

Following the death of Decedent on July 3, 2010, Plaintiff attempted to collect on the policy as the sole beneficiary. After MetLife received correspondence from Defendant Raelyn Erdner regarding the divorce decree, it initially denied one-half of Plaintiff's claim. ECF No. 4, Ex. I. In its counter-claim filed in this lawsuit, MetLife also stated it was "unable to determine whether the 2005 Beneficiary Designation was properly executed" or whether Decedent had sufficient capacity to make the change. It thus refused to pay any portion of the proceeds to Plaintiff, out of concern that it could be subject to double liability.

## II. PROCEDURAL HISTORY

Plaintiff filed this breach of contract action against MetLife in the Circuit Court of Fluvanna County, Virginia. ECF No. 1, Ex. A. Pursuant to 28 U.S.C. §§ 1441 and 1446, MetLife removed the action to this Court. ECF No. 1. MetLife then filed an answer, a third-party complaint against Defendants Raelyn and Stephen Erdner, and a counterclaim against Plaintiff

---

[1] William E. Dansey and Joseph Muchow, Dansey's husband and brother, respectively—and Decedent's nephews—were named as contingent beneficiaries on the same form.

3

and the interpleaded defendants. This Court granted MetLife leave to deposit the funds with the Court and discharged MetLife from the case. ECF Nos. 23, 27. The Court also permitted Pearl Erdner to intervene and join her children as a cross-claim defendant. ECF No. 19.

MetLife, a corporation with its principal place of business in New York, properly invoked this Court's diversity jurisdiction, 28 U.S.C. § 1332, in support of removal. See ECF No. 1 at ¶ 6. The Court concludes that it also has jurisdiction over the counterclaim and interpleader action, pursuant to 28 U.S.C. § 1335.

### III.  ANALYSIS

#### A.  Motion to Strike

Before addressing the summary judgment motion, the Court first addresses a related Motion to Strike, filed by Defendants. ECF No. 44. Specifically, Defendants allege that Dansey's Supplemental Declaration asserted new facts raised for the first time in Plaintiff's Reply and that it should be stricken. Id. at ¶ 4. Plaintiff submitted a memorandum in opposition (ECF No. 45) and points out that the alleged new facts asserted by Plaintiff arose from issues raised and admissibility objections made by Defendants in their opposition to summary judgment. Id. at 3–5. The Court is persuaded by Plaintiff's opposition memorandum and the cases cited therein. The new facts raised by Plaintiff's Reply specifically relate to issues raised by the Defendants and are therefore not prohibited as new evidence. See Ilozor v. Hampton Univ., No. 4:06-cv-90, 2007 WL 1310179, at *14 (E.D. Va. May 3, 2007). "[W]here the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment," it should not be stricken. Id. (citing Baugh v. City of Milwaukee, 823 F. Supp. 1452, 1456–57 (E.D. Wis. 1993)). Accordingly, Defendants' Motion

4

to Strike is DENIED and the Court will consider the otherwise admissible averments in the supplemental declaration.

### B. Motion for Summary Judgment

Plaintiff contends she is entitled to summary judgment because there is no genuine issue of material fact as to whether she is the sole beneficiary of the policy. She contends she is entitled to one hundred percent of the proceeds because Decedent was not limited by the 2003 Divorce Decree. Defendants disagree and posit that Decedent was prohibited by the Divorce Decree from designating a beneficiary for more than fifty percent of the policy. Defendants also argue that there is an issue of material fact as to whether Decedent knowingly changed the beneficiary to his policy in 2005.

#### 1. Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when a rational trier of fact, considering the evidence in the record as a whole, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). "Summary judgment is appropriate only if taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party, 'no material facts are disputed and the moving party is entitled to judgment as a matter of law.'" Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc) (quoting Ausherman v. Bank of Am. Corp., 352 F.3d 896, 899 (4th Cir. 2003)). A party opposing summary judgment, however, "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)

(citing Fed. R. Civ. P. 56(e) and First Nat'l Bank of Az. v. Cities Serv. Co., 391 U.S. 253, 288–89 (1968)).

### 2. 2003 Divorce Decree

As noted, the parties disagree about the effect of the Divorce Decree between Decedent and Pearl. Defendants' primary contention concerning the Divorce Decree is that it prohibited Decedent from naming Plaintiff the sole beneficiary of the MetLife policy, thus voiding the change in its entirety—or at least as to fifty percent of the policy. ECF No. 38 at 3. Defendants argue that the Divorce Decree binds Decedent and this Court and requires that his children get at least half of the proceeds of the policy, or twenty-five percent each. Plaintiff disagrees, arguing that because the Divorce Decree does not indicate any certain term for which the designation of the children must be maintained and does not expressly state that the designation is irrevocable, Decedent was under no obligation to maintain his children as fifty-percent beneficiaries forever. ECF No. 41 at 4. Instead, Plaintiff argues that Decedent complied with the provision when he named Raelyn and Stephen Erdner beneficiaries after the decree was entered. Id. Plaintiff further asserts that the lack of language expressly making the designation irrevocable renders the Divorce Degree ambiguous and that any ambiguities should be construed against the drafter, *i.e.*, Pearl Erdner and her attorneys.[2]

Plaintiff's argument is unpersuasive, most notably because it fails to abide by the established rule of contract interpretation that the contract "should be interpreted as so to give effect to each provision of the contract." Am. Roll-On Roll-Off Carrier, LLC v. P & O Ports Baltimore, 479 F.3d 288, 293 (4th Cir. 2007); id. ("A basic principle of contract interpretation . . .

---

[2] Plaintiff also suggested for the first time at the summary judgment hearing that the Divorce Decree (or at least the portion awarding benefits to the children, who were adults at the time of the divorce) may be invalid under a New York law that does not allow divorce decrees to provide support to adult-aged children. Irrespective of whether such a law would conflict with ERISA and be subject to preemption, this issue was not briefed or properly raised, so the Court does not consider it here.

6

is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous.") (quoting Chembulk Trading, LLC v. Chemex Ltd., 393 F.3d 550, 555 (5th Cir. 2004)). The Divorce Decree indicates that Pearl Erdner would name Raelyn and Stephen beneficiaries of half of the proceeds and that Decedent retained the right to name the beneficiary for the other half. If Plaintiff's argument were correct, it would make no sense for the express retention provision to be included, because Decedent would have in fact retained the right to name a beneficiary for one hundred percent of the proceeds, after taking the purely technical step of naming his children for some limited period of time. Plaintiff's interpretation also renders the promise (or the benefit to Pearl and the children) meaningless or superfluous. It would require only that the Decedent name his children for some unspecified length of time, even less than a day, and then he would be entitled to change the designation at will. This would contravene the plain meaning of the decree.

In short, the Court finds no ambiguity in the terms of the Divorce Decree and instead finds that it plainly required Decedent to give up his right to name a beneficiary for fifty percent of the policy's proceeds and gave that benefit to Pearl Erdner, who elected to designate her children as the beneficiaries.

Interestingly, the parties have not addressed in detail one of the primary legal issues raised by MetLife in its pleadings: whether the Divorce Decree constitutes a Qualified Domestic Relations Order ("QDRO") under ERISA. ECF No. 4 at ¶ 23. ERISA explicitly preempts all state law insofar as it "relates to" an ERISA plan. 29 U.S.C. § 1144(a). Whether the decree is a QDRO is significant because QDROs are statutorily excluded from the broad reach of ERISA's preemption provision. See 29 U.S.C. § 1144(b)(7) ("[The preemption clause] shall not apply to qualified domestic relations orders (within the meaning of section 1056(d)(3)(B)(i) of this title) .

. . ."). Thus, if the Divorce Decree here is a QDRO, it would not be preempted by ERISA and could be given full force and effect. If it is not a QDRO, then it would be preempted by ERISA. See Metro. Life Ins. Co. v. Pettit, 164 F.3d at 863–64 (a property settlement agreement entered into by two divorcing parties did not qualify as a QDRO and thus was preempted because the agreement provided "an alternate mechanism to obtain plan benefits"); id. at n.7 ("ERISA's preemption clause would bar any state law domestic relations order from attaching ERISA plan benefits, pension or welfare, if it did not qualify as a QDRO" and federal common law could not overcome ERISA's plain mandate).

Although Defendants state that the Divorce Decree is a QDRO, they do not specify how it meets the requirements of 29 U.S.C. § 1056(d)(3)(B)–(D). Instead, they simply contend that it is a QDRO "under New York law" (ECF No. 38 at 9) because its operative language is similar to the language of the divorce decree found to be a QDRO in Metropolitan Life Insurance Co. v. Bigelow, 283 F.3d 436, 441 (2d Cir. 2002). Plaintiff does not offer any argument as to why the Divorce Decree here is not a QDRO. In any event, Defendants did not timely move for summary judgment on this issue or any issue.[3] In light of this failure and the Court's ruling in the next section that there is a dispute of fact that places Plaintiff's right to any proceeds of the policy in question, the Court need not determine at this time whether the Divorce Decree is a QDRO.

### 3. June 2005 Change of Beneficiaries

As previously noted, the parties also disagree over whether the 2005 change to the beneficiary form designating Dansey as the sole beneficiary—which was made online—was

---

[3] At the hearing, Defendants' counsel acknowledged that he had not filed a written motion, but suggested that partial summary judgment in his clients' favor would be proper pursuant to Rule 56(f). Rule 56(f) allows the court to grant summary judgment or partial summary judgment independent of the motion, "[a]fter giving notice and a reasonable time to respond . . . ." The Court declines to issue a partial summary judgment ruling without allowing Plaintiff a proper opportunity to respond. Accordingly, to the extent that Defendants have made an oral motion for partial summary judgment, that motion is denied without prejudice.

8

validly and knowingly made by Decedent. The parties further contest the admissibility of each other's evidence offered to prove or disprove their versions of the facts.[4] The Court has carefully considered the admissible evidence offered by each party and determines that there are disputed issues of material fact as to whether Decedent himself knowingly changed the beneficiary.

The Court notes that Plaintiff has offered significant and substantial evidence to support her claim that Decedent knowingly changed the named beneficiary on his MetLife policy in June 2005. First, Plaintiff submitted the declaration of Steven Shareff with her memorandum in support of summary judgment. ECF No. 34, Shareff Decl. Mr. Shareff is an attorney who avers that he met with Decedent on June 8, 2005 to prepare a will for Decedent. Shareff Decl. at ¶ 3. Mr. Shareff states that Decedent directed that Plaintiff be made the sole beneficiary of the will and that his children—Defendants Raelyn and Stephen Erdner—be disinherited. Shareff Decl. at ¶ 4. Mr. Shareff also states that his file notes reflect Decedent expressed a desire to make Dansey the sole beneficiary of the MetLife insurance policy. Shareff Decl. at ¶ 6. Mr. Shareff noted that he advised Decedent that the will would not affect the life insurance policy and that he would need to make that change under the policy. *Id.* While Defendants challenge much of Mr. Shareff's declaration on hearsay grounds, the Court concludes that most, if not all, of the hearsay contained therein falls within the hearsay exception of Rule 803(3), which allows a court to admit, regardless of a declarant's availability, "[a] statement of the declarant's then-existing state of mind (such as motive, intent or plan) . . . ." Fed. R. Evid. 803(3); see also United States v. Srivastava, 411 F. App'x. 671, 684 (4th Cir. Feb. 18, 2011) (unpublished) (collecting authority

---

[4] As noted, the life insurance policy at issue in this case is governed ERISA, which preempts all state laws that relate to any employee benefit plan. 29 U.S.C. § 1144(a). Because federal law supplies the rule of decision, the federal rules of evidence apply. Phoenix Mut. Life Ins. Co. v. Adams, 30 F.3d 554, 566 (4th Cir. 1994). Additionally, federal procedural standards—including federal law as to the admissibility of evidence—govern summary judgment in any case. Utility Control Corp. v. Prince William Constr. Co., Inc., 558 F.2d 716, 720 (4th Cir. 1977). Accordingly, to the extent that the parties' arguments rely on state evidentiary rules, the Court does not consider those arguments.

and discussing the requirements for admissibility under Rule 803(3)). Many of the statements of Decedent referenced in Mr. Shareff's declaration are admissible under this exception and thus support Dansey's version of the facts.

Plaintiff also submitted her own declaration, in which she states that she was present when Decedent made the change on June 10, 2005. Dansey Decl. at ¶ 4. Plaintiff attached a copy of the Beneficiary Designation, printed by Decedent and given to Plaintiff on June 10, 2005. ECF No. 34, Ex. C; Dansey Decl. at ¶ 4.[5] Plaintiff's declaration also states that Decedent told her he was making her the primary beneficiary "out of gratitude for helping him at a time in his life when he was suffering serious health problems." Dansey Decl. at ¶ 7. Plaintiff further states that she was present when Decedent called his nephew, Joseph Muchow, on that day to get the necessary information to make him a contingent beneficiary. Dansey Decl. at ¶ 5; see also ECF No. 34, Ex. J. These statements, too, are admissible under Fed. R. Evid. 803(3).

Defendants contest the validity of the change in beneficiaries, and allege that Decedent did not have knowledge of the change. They suggest instead that Plaintiff made the change using information available to her. ECF No. 38 at 1–2. They argue that for this reason, they are the beneficiaries of one hundred percent of the MetLife policy. In support of their version of the facts, Defendants offer circumstantial and testimonial evidence that Decedent had no knowledge of the change of beneficiary made on June 10, 2005. Defendants point to the Divorce Decree, which ordered Decedent to name his two children as the beneficiaries of half of the proceeds, and Decedent's subsequent compliance with this order. ECF No. 38 at 7, Ex. A. Based on this,

---

[5] While Defendants challenge the document as inadmissible, Dansey has averred that it was given to her by Decedent after he printed it. A similar document was also attached to one of MetLife's pleadings. Although this document may not be properly authenticated for purposes of summary judgment, there is enough evidence, even without it, to support a finding that Decedent made the change, as discussed herein.

10

they contend that Decedent would not have tried to name someone as one hundred percent beneficiary, since he knew he had no right to do so.

Defendants also suggest that Dansey had the means and opportunity to make the change herself. In support of this allegation, they note that MetLife sent to Decedent's post office box in Troy, Virginia a letter that included his employee identification number and encouraged him to use an online form to restate or change his beneficiary designation ECF No. 38 at 7; Erdner Decl. at ¶ 9, Ex. B. Moreover, in her affidavit, Defendant Pearl Erdner states that Decedent was living in Charlottesville at the time the letter was mailed and that Plaintiff had access to retrieve Decedent's mail from the post office box. Erdner Decl. at ¶ 10.[6] Defendant Pearl Erdner also found among Decedent's personal papers a document in Plaintiff's handwriting that read: "User Name Uncle 999 Password 99999W." Erdner Decl. at ¶ 15. Pearl Erdner states that she is informed and of the belief that this was the account information used to change the beneficiary designation on the MetLife policy. Id. Lastly, Pearl Erdner notes that Decedent "undertook to remove Plaintiff as a beneficiary to any of his estate or assets, including his will," shortly after he returned to New York and reconciled with Defendants. Id. at ¶¶ 19–20. In light of this, Defendants contend that Decedent's failure to change the Policy's beneficiary designation back to his children supports an inference that he did not know it had been changed to someone other than his children.

While the evidence in support of Defendants' contentions is somewhat weak based on the current record, the Court concludes that the evidence is sufficient to create a genuine dispute of material fact as to whether or not Decedent knowingly changed the beneficiary designation for

---

[6] Plaintiff objects to these statements for lack of personal knowledge. Pearl's affidavit states that she has personal knowledge, but offers no other evidence to support this. On the basis of the current record, the Court cannot say definitively whether Pearl Erdner does or does not have personal knowledge of these facts. Regardless, even if these statements were inadmissible, Defendants have provided other admissible evidence sufficient for the Court to rule on this motion.

11

his MetLife policy. The testimony of Decedent's attorney certainly provides significant evidence that it was Decedent's desire to name Dansey as his beneficiary in 2005. Plaintiff's own testimony, as well, would support such a finding. This Court, however, must consider whether a reasonable fact-finder could find for Defendants, and must draw all reasonable inferences in the light most favorable to them. In doing so, the Court concludes that Defendants have provided sufficient admissible circumstantial evidence to support the existence of a genuine issue of material fact as to whether Decedent executed the change in beneficiary form. At the very least, the facts and inferences surrounding (1) the letter sent by MetLife in May 2005, (2) the subsequent use of an online beneficiary designation form, and (3) Decedent's apparent subsequent efforts to remove Plaintiff as a beneficiary to his estate and assets, are sufficient to overcome Plaintiff's assertion that no genuine issue of material facts exist. Accordingly, Plaintiff's motion for summary judgment is **DENIED**.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' Motion to Strike (ECF No. 44) is **DENIED** and Plaintiff's Motion for Summary Judgment (ECF No. 33) is **DENIED**. An appropriate order shall issue this day.

ENTER: This ____ day of October, 2012.

_____
James C. Turk
Senior United States District Judge

12